Collins, Judge,
delivered the opinion of the court:
This action arises out of a contract relating to the construction of a Capehart housing project[1] at Clinton County Air Force Base, Wilmington, Ohio. The invitation for bids was issued by the Department of the Air Force on March 30, 1959. Plaintiff submitted a bid which, on April 30,1959, was determined to be the lowest acceptable bid. On June 5,1959, the Department of the Air Force issued to plaintiff a letter of acceptability.[2] The initial closing was originally scheduled for August 7, 1959; however, the date was ultimately extended to October 29, 1959. For reasons to be explained infra, plaintiff refused to effectuate the closing. As a result of plaintiff’s refusal, the Air Force withdrew and canceled the letter of acceptability. In this action, plaintiff seeks to recover $38,016, the total of plaintiff’s bid deposit ($25,000) and the fee ($13,016) paid to the Federal Housing Administration in connection with the application for mortgage insurance commitments.
Plaintiff asserts that its refusal to comply with the requirements of the letter of acceptability was justified, in that plaintiff’s performance of the contract was hindered by the Government. Plaintiff’s present contention is that, because of delay in issuing the letter of acceptability and delay of the Secretary of Labor in making a correct determination of the prevailing wages, the project became economically infeasible for plaintiff. According to plaintiff, the delays had two ad *4 verse consequences. First, the cost of financing was increased. Second, what would have been a “one-winter project” (if a timely closing had taken place) was turned into a “two-winter project.” A complete statement of the facts is contained infra.
Initially, consideration must be given to the contention of defendant that the decision of the Armed Services Board of Contract Appeals (hereinafter referred to as the “ASBCA” or the “Board”) is final and binding.’
On October 26, 1959, plaintiff wrote the Air Force that plaintiff was withdrawing its bid; also, plaintiff requested the return of its bid deposit of $25,000. Upon the refusal of the contracting officer to refund the bid deposit, plaintiff took an appeal to the Secretary of the Air Force. In a decision dated September 30, 1960, the ASBCA denied the appeal of plaintiff. Under the terms of the letter of acceptability,[3] the decision of the ASBCA regarding retention of the bid deposit as liquidated damages was final unless such decision was determined by an appropriate court to have been “fraudulent or capricious or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence.”
To the extent the definition of what constitutes an excusable default rests on the interpretation of the clauses setting out the obligations of the parties, the issue is one of law, being no different from a conventional interpretation of the contract. See Stein Bros. Mfg. Co. v. United States, 162 Ct. Cl. 802, 337 F. 2d 861 (1963); Jansen v. United States, 170 Ct. Cl. 346, 344 F. 2d 363 (1965). However, a case may turn on whether one party or the other did one or more of the items which it was obligated to do. In some cases the principal issue involved in ascertaining whether the default is excusable may well be one of fact. See Anthony P. Miller, Inc. v. United States, supra note 1; Carol D. Heers v. United States, 165 Ct. Cl. 294 (1964). In the instant case, we need not distinguish between these situations for the result is the same under either analysis.
At the outset, we note that plaintiff’s refusal to proceed could not be justified on the basis of an increase in the cost of *5 borrowing the necessary funds. As this court pointed out in Anthony P. Miller, Inc. v. United States, supra note 1, at 471, “market fluctuations affecting the cost of financing are risks the bidder must assume just as he assumes the risk of higher labor and material costs.” Here, the possibility that the lender would charge a higher premium was a risk to be borne by plaintiff.
This court must now examine plaintiff’s contentions that the delays necessitated a two-winter operation and a consequent increase in construction costs. The first alleged delay on the part of the Government was the period of some 36 days which elapsed between the bid opening (on April 30, 1959) and the issuance of the letter of acceptability (on June 5,1959). In support of its contention, plaintiff refers to the provision in the invitation for bids that “ ‘Timely Closing’ * * * is construed to be a period of approximately 60 days from the date of opening of bids.” On the other hand, defendant points out that a more specific requirement of the invitation for bids was that the lowest acceptable bidder must “effect a closing with FHA within the time prescribed in the Letter of Acceptability * * Here, the closing date established in the letter of acceptability was August 7, 1959. Also, defendant notes that plaintiff’s acknowledgments of the letter of acceptability contained no protests as to its timing.[4]
This court is in agreement with defendant that issuance of the letter of acceptability on June 5, 1959, was consistent with the requirements of the contract. The ASBCA properly determined that this alleged delay did not afford a valid basis for plaintiff’s refusal to perform.
With regard to the determination of prevailing wages, plaintiff asserts that “it took from June 19,1959 to September 25, 1959 for * * * the Department of Labor, to furnish plaintiff a correct determination * * The facts show that, on June 12, 1959, just after receipt of the letter of acceptability, plaintiff applied to the Department of Labor *6 for a current prevailing wage certificate.[5] On June 19, 1959, the Secretary of Labor made a new wage determination, and, on June 26, a copy was mailed to plaintiff by the contracting officer. Plaintiff, which had made an independent investigation of the prevailing wages, asserted that the wage certificate contained numerous errors in that various wages shown were lower than the actual prevailing rates.
Plaintiff endeavored to obtain the correction of the wage schedule. Ultimately, with a single exception, all of the changes sought by plaintiff were granted. It is true that it was not until September 29, 1959, that plaintiff received copies of the final two modifications of the wage certificate. However, on August 31,1959, plaintiff had been notified of a modification which met plaintiff’s demands except with regard to three wage categories.
According to the ASBCA, it was not proper to attribute all of the delay to the Government. The Board noted that July 21, 1959, was the date when plaintiff’s actual request for correction of the wage schedule was transmitted to the Department of Labor. Also, the Board pointed out that the time spent on verifying plaintiff’s requests inured to the benefit of plaintiff. With regard to the matter of “two winters,” the Board was unable, on the basis of the evidence presented, to determine either the length of time or the amount of expense which the construction would have required.
In view of the facts outlined above, this court is in accord with the conclusion of the ASBCA that neither the delay in issuing the letter of acceptability nor the time spent in making the prevailing wage determination justified the withdrawal by plaintiff of its bid.[6] It cannot be said that the *7 findings of tbe Board were arbitrary or capricious, or that they lacked support by substantial evidence. Our conclusion that the delays did not excuse plaintiff’s refusal to proceed is not inconsistent with the finding that the delay in correcting the wage determination was prejudicial to plaintiff. This court has rejected plaintiff’s contention that the entire delay was the responsibility of the Government. Furthermore, not every delay by one party to a contract will discharge the other party’s obligation to perform. Cf. Wells Benz, Inc. v. United States, 333 F. 2d 89, 92 (9th Cir.1964). Therefore, whether the ultimate question be one of law or one of fact, we hold that there was no proper basis for plaintiff’s refusal to proceed.
Plaintiff contends that, since the ASBCA had no jurisdiction to render a decision relative to determinations of the FHA, plaintiff is entitled to a trial de novo regarding the correctness of the FHA determination. The answer to this contention is that plaintiff’s request for a trial pertaining to the FHA decision comes too late. Trial of the instant case was to take place in this court on January 14, 1963, but, on that date, the parties agreed to rely upon the record which had been presented before the ASBCA.[7] This agreement was carried out, and it provided the basis for the report of the trial commissioner. Therefore, plaintiff is not, at this stage, entitled to a trial de novo. Plaintiff waived any rights to a trial in this court.[8]
On September 22, 1959, after the Secretary of Labor had modified the wage schedule, the FHA determined that the proper adjustment of the contract price would be an increase in the amount of $156,500. Plaintiff considered the amount of the increase to be inadequate, and plaintiff asserted that the amount of the adjustment should have been $296,900. Our trial commissioner found as follows:
* * * the evidence in the record is not sufficient to permit a factual determination to be made regarding the *8 correctness or incorrectness of tbe Federal Housing Commissioner’s action in calculating tbe amounts of the mortgage insurance commitments, as amended. Therefore, tbe administrative action is presumed to have been correct. (Finding 88, infra.)
This court has adopted tbe above finding. Plaintiff has failed to show that tbe FELA, determination was incorrect.[9]
Tbe trial commissioner also found that plaintiff’s principal reason for failing to proceed was not tbe prejudicial effect of the delays, but was dissatisfaction with tbe amount of tbe FHA determination. The record supports this finding. For example, plaintiff’s main witness testified that, if a satisfactory adjustment of the contract price had been made, plaintiff would have performed. See finding 29, infra. This finding regarding plaintiff’s dissatisfaction with the FHA determination lends support to our conclusion that tbe delays did not justify plaintiff’s refusal to perform.
There remains tbe question of plaintiff’s entitlement to return of tbe fee of $13,016 paid to the FHA at the time of the application for mortgage insurance commitments. This claim was not involved in tbe proceedings before tbe ASBCA. Under tbe terms of tbe letter of acceptability, plaintiff was obligated, at its expense, to cause tbe mortgage lender to apply to tbe FHA for mortgage insurance. Also, plaintiff was required to take all steps necessary to cause the FHA to issue a commitment for insurance.
In a previous case, Carol D. Heers v. United States, supra, this court bad occasion to consider a claim for tbe return of an FHA application fee. In Heers, it was pointed out that the pertinent FHA regulation was as follows:
Sec. 292a.3 — Application fee.
(a) No application will be considered unless tbe fee therefor has been paid. This fee, referred to as the application fee, is $1.50 per thousand of tbe face amount of tbe loan applied for.
(b) If an application is rejected before it is assigned for processing by tbe [Federal Housing] Commissioner, or in such other instances as the Commissioner may de *9 termine, the entire fee. or any portion thereof may be returned to the applicant. [21 F.R. 317 (1956), as amended, 24 F.R. 5302 (1959).]
This court stated that the purpose of the fee was to cover the expense of processing the application and that return of the fee to Heers was discretionary with the Federal Housing Commissioner. It was held (pp. 311-312) that the refusal of the Federal Housing Commissioner to return the fee to Heers was not an abuse of discretion, and, therefore, Heers was not entitled to recover.
The analysis used in Heers is applicable to the instant case. The issue is whether the FHA. was guilty of an abuse of discretion. In the opinion of the court, plaintiff has failed to demonstrate that the action of the FHA in refusing to return the fee was improper. Plaintiff’s application for mortgage insurance was not rejected, but, on the contrary, insurance commitments were issued (on June 29, 1959) and amended (on September 22, 1959). Under the circumstances of this case, it cannot be said that the FHA abused its discretion.
In conclusion, plaintiff is not entitled to recover either the bid deposit or the amount of the application fee. Accordingly, the petition is dismissed.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Mastín G. White, and the briefs and argument of counsel, makes findings of fact as follows:[1]
1. The plaintiff, Terminal Construction Corporation, is a corporation organized and existing under the laws of the *10 State of New Jersey, and maintains its principal office and place of business in Wood-Ridge, New Jersey.
2. Prior to tlie events that are involved in the present litigation, the plaintiff had accumulated a great deal of experience in the construction of housing projects for the military services under the Capehart Act. The plaintiff had been the low bidder on, and had successfully built, more than 5,000 Capehart housing units for a total consideration approximating $85,000,000.
3. (a) Under the date of March 30, 1959, the Department of the Air Force issued invitation for bids No. 33-625-59-12 relative to the construction of a Capehart Act housing project at the Clinton County Air Force Base, Wilmington, Ohio. The project was to consist of a total of 536 housing units, divided into four mortgage areas designated as Area A, Area B, Area C, and Area D. Area A was to contain 160 units; Area B was to contain 162 units; Area C was to contain 102 units; and Area D was to contain 112 units.
(b) The invitation for bids stated in part as follows:
2. Sealed bids (in triplicate) for the construction through FHA insured mortgage financing of the above described total housing project, including the furnishing of all necessary labor, equipment and materials and the performing of all work, services and arrangements, in strict accordance with the terms of a Letter of Acceptability and a Housing Contract, specimen forms of each being attached hereto, will be received at Base Procurement Office, Clinton County Air Force Base, Wilmington, Ohio until 1:00 p.m. ÉST on 30 APRIL 1959.
íj* »[• *í» «Js JÍ»
5. Under the provisions of Title IY of the Housing Amendments of 1955, as amended, the total principle [sic] amount of the mortgages is limited, among other things, to the amount of the bid of the eligible builder. However, the Davis Bacon Act and Section 212(a) of the National Housing Act as amended require that wages paid to laborers and mechanics be the prevailing wage as determined by the Secretary of Labor not more than ninety (90) days prior to the commencement of construction. Since more than ninety (90) days may elapse from the date of this Invitation for Bids to the commencement of construction, the bids called for by this Invitation for Bids will include a provision for *11 adjustment of the dollar amount therein specified to reflect any difference between the tentative minimum wage schedule attached hereto and the applicable minimum wage schedule as finally determined by the Secretary of Labor. Any such adjustment will be in an amount determined by the Commissioner to reflect such differences, and the amount of the lowest acceptable bid and the FHA estimated total replacement cost of the projects will be amended in the amount so determined by the Commissioner; except that, if such an adjustment would increase the amount of the bid above the amount of any other statutory maximum applicable to the insurable mortgages, the eligible builder will have the option of reducmg his bid to such statutory maximum or of withdrawing his bid.
* * * * *
8. Each bidder is required to submit with his bid a certified check in the amount of $25,000, payable to the Treasurer of the United States, to insure that if he is the lowest acceptable bidder for the total of 536 family housing units he will perform the necessary preliminary steps and effect a closing with' FHA within the time prescribed in the Letter of Acceptability, including the furnishing of an acceptable performance and payment bond. In the event the lowest acceptable bidder fails to effect a closing with FHA within the time prescribed, his deposit will be forfeited and become the property of the Government as damages unless the Department finds that he has made every effort to effect such closing and extends the time to effect such closing. If the lowest acceptable bidder effects a timely closing with the FHA the amount of his deposit will be refunded to him 24 hours after the initial closing with FHA. The deposits of unsuccessful bidders wiU be returned to them not later than 60 days after the opening of the bids. Each prospective bidder is advised that the failure to submit such certified check with his bid will render his bid defective and will be cause for its rejection.
a. “Timely Closing” as referred to in this paragraph of the Invitation for Bids and Closing period as referred to elsewhere in these forms is construed to be a period of approximately 60 days from the date of opening of bids.
if: $ $ $ $
11. The dollar amount of the acceptable bid will.be divided, for mortgage purposes, in the same proportion as the FHA TOTAL ESTIMATED REPLACEMENT COST for each property or project as shown in each of *12 the 4 Final Appraisal and Eligibility Statements issued by the Federal Housing Commissioner, copies of each being attached hereto for your information.
12. Bidders are advised that the maximum total of the insurable mortgages may not exceed the lesser of three items being (1) amount of the lowest acceptable bid, (2) FHA Total pf the estimated replacement cost of the property or projects or (3) an average per family unit of $16,500 less the estimated value of any usable utilities within the property or projects where owned by the Department or furnished by other than the mortgage proceeds. Attention is invited to FHA’s Final Appraisal and Eligibility Statements attached hereto. The bidder will be required to pay the fees and costs prescribed in such statements.
13. The eligible builder will be required at Ms own expense to obtain from the State of Delaware a corporate charter for each mortgagor-builder corporation in a form acceptable to the Commissioner. The mortgagor-builder to be named Clinton County AFB Housing No. One, Inc., Clinton County AFB Housing No. Two, Inc., Clinton County AFB Housing No. Three, Inc., and Clinton County AFB Housing No. Four, Inc., will have a paid-in capital stock of $1,000 each, and will be qualified to do business in the State in which the housing projects are'to be located, the cost of which will be borne by the eligible builder. The stock of each mortgagor-builder will be at the time of closing, deposited in escrow with the mortgagee for delivery to the Department upon the determination by the Commissioner of the completion of each' project and the final endorsement of the mortgage note for mortgage insurance, or upon termination of the Housing Contract for the convenience of the Department prior to completion.
# Hi * * *
19. The eligible builder will be required to pay the filing fee, processing fee and commitment fee prescribed by the Commissioner.
$ $ $ £ #
22. The eligible builder, and all his subcontractors, will be required to pay all mechanics and laborers employed or working directly upon the sites of the housing proj ects not less than the prevailing wages as determined by the Secretary of Labor. A tentative wage scale is attached hereto. Such tentative wage scale is, however, subject to revision prior to actual start of construction in accordance with Secretary of Labor requirements. For the effect of such revisions, see para 5 above.
*13 (c) Accompanying the invitation for bids were appraisal and eligibility statements which had been issued by the Federal Housing Commissioner as of March 25,1959, and which set out the estimated maximum insurable mortgage amounts for the four mortgage areas, as follows:
Area A_$2,352,100
Area B- 2,323,400
Area C_ 2,028,000
Area D_ 1,954,600
These amounts were subject to revision after the issuance by the Secretary of Labor of a final wage determination for the project, pursuant to paragraph 5 of the invitation for bids.
(d) Also accompanying the invitation for bids was a wage determination, T-16,212, that had been issued by the Secretary of Labor on February 27,1959, relative to the prevailing wage rates for various classes of laborers in the locality of the Clinton County Air Force Base. This wage determination, which was characterized by paragraphs 5 and 22 of the invitation for bids as a tentative wage determination for the project, stated that it would expire on May 29,1959.
4. (a) In accordance with the invitation for bids referred to in finding 3, the plaintiff submitted a bid under the date of April 30, 1959. The plaintiff’s bid was accompanied by a deposit in the amount of $25,000, as required by paragraph 8 of the invitation for bids.
(b) The bid form contained the following statements (among others):
2. The bidder represents that the sum in paragraph 1 above is the bidder’s total price, including profit, for complying at bidder’s expense with all requirements of the specimen form of Letter of Acceptability attached to the Invitation for Bids, for underwriting during construction all expenses and obligations of the mortgagor-builder corporations except those arising during construction that are specifically guaranteed by the Department, and for completing at bidder’s expense everything to be called for by a Housing Contract containing the same terms, conditions, provisions, and Drawings and Specifications as the specimen form of Housing Contract attached to the Invitation for Bids.
3. The bidder understands that, if this bid is determined to be the lowest acceptable bid, the Department *14 will issue to him a Letter of Acceptability in the form attached to the Invitation for Bids, and the bidder agrees that upon issuance of such Letter of Acceptability he becomes obligated to carry out its terms within the times therein stated, at his own expense, within the conditions of his bid security, and without further acceptance, award, advice or other action by the Department. Such obligations include an obligation to cause performance by the mortgagor-builder corporations, to be formed by the bidder, of each and every act required of it in the Letter of Acceptability, to cause the execution by said mortgagor-builder corporations of a Housing Contract containing the same terms, conditions, provisions and Drawings and Specifications as the specimen form of Housing Contract attached to the Invitation for Bids, and an obligation to execute the Housing Contract with good and sufficient surety or sureties as required therein, within the times specified in and in accordance with the Letter of Acceptability.
4. The Bidder represents that he is aware of the statutory requirements of Section 212(a) of the National Housing Act, as amended, and of the Davis Bacon Act that wages to be paid to laborers and mechanics employed in the construction of the projects are required to be not less than those contained in the prevailing wage determination of the Secretary of Labor, and that, in order to comply with these statutory provisions, the bid price is subject to increase or decrease by an amount determined by the Federal Housing Commissioner (hereinafter called the “Commissioner”) to represent the difference in the “Total Estimate of Replacement Cost of the Total Project”, computed according to the wage schedule attached to the Invitation for Bids and computed according to the wage schedule as amended by the “prevailing wage determination” as that term is defined in Paragraph 19 of the specimen form of Housing Contract attached to the Invitation for Bids. Moreover, the Bidder realizes that, if the amount of his bid as specified in the Letter of Acceptability, is thereby increased so as to exceed the maximum total amount of the insurable mortgages as determined by the Commissioner, the bidder shall have the option of reducing his bid to the amount of the maximum total insurable mortgages as determined by the Commissioner, or of withdrawing his bid.
7. The bidder understands that, if selected as lowest acceptable bidder, he is obligated to pay prior to or *15 at the time of closing with FHA (the term “closing” as used herein refers to the series of substantially simultaneous transactions among the parties in interest, at a place designated by the military and FHA, which include, but is not limited to, delivery of the leases to the mortgagor-builder corporations, delivery of the mortgages and mortgage notes to the mortgagees, initial endorsement of the mortgage notes for mortgage insurance by the Commissioner) the FHA commitment, filing and processing fees, the initial FHA mortgage insurance premium of $1.00 for each FHA project, the inspection fees 119,710.00, the architect-engineer design fee in the sum of $107,170.00, and any other expenses incurred by the mortgagor-builder corporations and the eligible builder pursuant to the Invitation for Bids and the documents thereto attached. The architect-engineer fee and the inspection fee will be paid by certified or cashiers check to the order of the Treasurer of the United State at the time of closing.
8. The bidder agrees that, if issued a Letter of Acceptability, and if he does not exercise the option of withdrawing his bid pursuant to Paragraph 4 above, he will commence the work called for by the Drawings and Specifications within 15 calendar days after the date of closing, and that he will complete the work called for by the Housing Contract as expeditiously as possible, but in no event later than 540 calendar days after date of closing.
5. Prior to submitting the bid referred to in finding 4, the plaintiff had ascertained that temporary and permanent financing for the construction of the project, if the plaintiff should be the successful bidder, could be obtained on the basis of paying a premium ranging between 3% percent and 4 percent of the amount borrowed, in addition to paying the prescribed rate of interest during the life of the loan.
6. The bids submitted in response to the invitation for bids mentioned in finding 3 were opened by the Department of the Air Force on April 30, 1959. The plaintiff’s bid was determined to be the lowest acceptable bid.
■7. (a) Under the date of June 5,1959, George S. Kobinson, Deputy Special Assistant for Installations, Department of the Air Force, issued to the plaintiff a letter of acceptability, stating in part as follows:
1. Your bid dated 30 April 1959, in the amount of $8,677,750, offering to construct through mortgage fi *16 nancing the housing project consisting of 536 units at Clinton County Air Force Base, Ohio, * * * has been determined by the Department of the Air Force * * * to be the lowest acceptable bid. * * * Issuance of this Letter of Acceptability obligates you, at your expense and within the condition of your bid security, to:
a. Complete in conformity with the requirements of the Federal Housing Commissioner the corporate organization of Clinton County AFB Housing, Inc., Clinton County AFB Housing No. Two, Inc., Clinton County AFB Housing No. Three, Inc., and Clinton County AFB Housing No. Four, Inc., (hereinafter referred to as the “Mortgagor-Builder”) in accordance with the laws of the State of Delaware, with each having a paid-in capital stock of $1,000, cause them to be qualified to do business in the State in which the housing project is to be located, cause the mortgagor-builder to hold an immediate election of officers with authority on behalf of the mortgagor-builder to execute with the Department four leases of land from the Department, to execute the Housing Contract hereinafter referred to, and such other instruments as may be required by the Commissioner or the mortgagee.
b. Immediately following such incorporation of the four corporations and election of officers, cause the stockholders of the mortgagor-builder to execute a stock transfer and escrow agreement for each of the corporations in a form approved by the Commissioner.
c. Complete the necessary arrangements with a mortgage lender acceptable to the Commissioner as a mortgagee for financing the total cost, including your profit, of said housing project through the execution of mortgages and mortgage notes for a period of twenty-five years and bearing interest at four and one-half per centum per annum, with the option of prepayment without penalty at the end of fifteen years; cause the mortgagor-builder and said mortage lender to enter into a Building Loan Agreement for each corporation, a specimen form of which is attached to the Invitation For Bids; cause said mortgage lender to apply to the Commissioner for mortgage insurance for each corporation, and take all steps necessary to cause the Commissioner to issue a Commitment for Insurance to provide insurance during and after construction of said housing project.
d. Cause the mortgagor-builder to execute in Wilmington, Ohio four leases, a form of which is attached to the Invitation For Bids, with the appropriate officer of the Department.
*17 e. Make arrangements for and obtain suck title insurance policies or other evidence of title, based upon the surveys of the housing project sites and the descriptions contained in the leases mentioned in the preceding subparagraphs, as may be required by such mortgagee ana the Commissioner, or either of them. For this purpose, you may obtain from the Contracting Officer copies of the surveys made in connection with the Architect-Engineer contract.
f. Make all necessary arrangements with the Department or otherwise for the utility services required and be prepared at the closing (as defined in your bid) to furnish evidence in the form of written contracts or commitments that there will be made available to you during the construction period at the housing project sites such utility services as will be adequate for construction.
g. Be prepared to pay or cause to be paid prior to or at the closing: (1) to the commissioner, the filing fee, processing fee, commitment fee and initial premium for mortgage insurance during the construction period; (2) to the Contracting Officer $107,170 representmg the cost of the Architect-Engineer services for the design of the Housing Project, the inspection fee in the amount of $119,710, and the sum of $4,000 as consideration for the four leases; and (3) any other expenses incurred by the mortgagor-builder and the bidder pursuant to the Invitation For Bids and the documents thereto attached.
h. Be prepared at the closing to furnish a properly executed performance and payment bond (FHA Form 2452C, Performance Bond-Dual Obligee, FHA Form 2452CP, Payment Bond-Dual Obligee) as required pursuant to Article XIII of the form of Housing Contract attached to the Invitation For Bids.
i. Execute prior to or at the time of closing the Housing Contract and all other documents required to be executed or delivered 'by you at such closing.
j. Cause the mortgagor-builder and the mortgagee through their duly authorized representatives prior to or at the time of closing to execute all documente required to be executed and delivered by them respectively at the closing.
k. Furnish the Air Force representative with two (2) photostatic copies of each of the FHA Commitments for Insurance and the FHA Project Analyses as soon as possible after issuance thereof, and two copies of all additional closing papers required by the Commissioner or said mortgagee.
*18 1. Furnish prior to the closing an approved and executed Trade Payment Breakdown, FHA Form 2586, including the signature thereon of the mortgagor-builder.
m. Aclmowledge in writing receipt of this Letter of Acceptability and attach an estimated schedule showing dates upon which you will have accomplished the several steps required above.
n. Make application through the Contracting Officer, Cinton County Air Force Base, Ohio, to the Secretary of Labor for an appropriate wage determination, if necessary (on a Department of Labor Form DB-ll, which will be supplied upon request by the Contracting Officer) for use in the construction of the project, and furnish a copy of such wage determination to the Contracting Officer and the Commissioner. Such wage determination will be used by the Commissioner to increase or decrease the bid price in the manner specified in your bid.
2. Failure to perform all obligations prior to the time prescribed for closing will be just cause for cancelling all commitments undertaken with you in connection with the housing project and for the recovery under your bid security of liquidated damages in the sum of $25,000 together with actual damages to the Department, such actual damages to be itemized and determined by the Contracting Officer, whose decision will be reduced to writing and furnished to you by mail or otherwise. Such decision shall be final and conclusive unless, within 30 days from the receipt thereof, you appeal in writing to the head the Department or his duly authorized representative, and his decision shall, unless determined by a court of competent jurisdiction to have been fraudulent or capricious or arbitrary,. or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence, be final and conclusive. In connection with any appeal under this paragraph you will be afforded an opportunity to be heard and to offer evidence in support of your appeal.
*****
5. You are required to furnish written proof satisfactory to the Contracting Officer within thirty (30) days of the date of this Letter of Acceptability that you have a firm arrangement (1) with an acceptable financial institution to furnish the construction financing evidenced by the filing of an application for mortgage insurance with the Federal Housing Insuring Office; and (2) a written commitment by a qualified lender to purchase *19 the mortgage as a long-term lender. Your failure to furnish this proof within the thirty (30) days will be determined to be evidence that you are unable to fulfill the terms of your bid and this Letter of Acceptability and result in this Letter of Acceptability being of no further effect, provided that the Contracting Officer in writing may extend the date for furnishing the information required in (1) and (2) above upon your submission of written documented proof that the delay was caused by conditions beyond your control.
6. You are require[d] to be ready for the closing on or before 7 August 1959, and your failure to do so will indicate your inability to carry out the obligations and terms of your bid and this Letter of Acceptability, provided that the Contracting Officer may extend the date of closing in writing upon your submission of written documented proof that the delay was caused by conditions beyond your control.
(b) The price of $8,677,750 covered the plaintiff’s basic bid and certain additive alternates that were included in the bid and accepted by the Air Force.
8. The letter of acceptability was received by the plaintiff on June 11,1959.
9. On June 12, 1959, the plaintiff wrote a letter to the contracting officer at the Clinton County Air Force Base, stating in part as follows:
I have caused a current investigation to be made of prevailing wage rates affecting the above-mentioned job and, you will note from the copy of letter herewith enclosed to Boger Peed, Esq., that rates in practically all of the trades have been increased, which increases are supported by documented evidence, and application is therefore immediately being made to the Department of Labor for a new Prevailing Wage Certificate so that the appropriate adjustment may be made in contract price, in pursuance to the terms of the contract documents.
10. On June 17, 1959, the plaintiff wrote to George S. Bobinson a letter stating in part as follows:
This will acknowledge receipt of your letter dated June 5, 1959 relative to the above wherein we note that you have accepted our bid in the sum of $8,677,750 * * *.
Please be advised that Boger Peed, Esq. of 1737 M Street, N.W., Washington, D.C. is authorized to represent us as our closing counsel in this matter and has been *20 instructed to expeditiously proceed with, all of the necessary steps in order to effectuate the closing within the time indicated in your letter of acceptability aforementioned.
*****
We take this opportunity of expressing our appreciation of this award to us and sincerely hope that our past record of field performance in the construction of Housing for the Department of the Air Force will continue to our mutual satisfaction.
H. Following the receipt of the letter of acceptability, the plaintiff forthwith proceeded to file with the Federal Housing Commissioner applications for mortgage insurance commitments. A filing fee in the amount of $13,016 was paid to the Federal Housing Administration in connection with such applications.
,12. Following the receipt of the letter of acceptability, the plaintiff immediately instructed its counsel to proceed with the formation of the four corporations required in the letter of acceptability. The four corporations were formed and the required fees were paid. The names of the corporations were Clinton County AFB Housing, Inc., Clinton County AFB Housing No. Two, Inc., Clinton County AFB Housing No. Three, Inc., and Clinton County AFB Housing No. Four, Inc. Directors and officers of the corporations were elected.
13. (a) On June 19,1959, a new wage determination, T-25, 787, was made by the Secretary of Labor for the Capehart Act housing project at the Cinton County Air Force Base. This wage determination stated that it would expire on September 18, 1959. Wage determination T-25,787 showed substantially higher prevailing wage rates for certain classes of laborers than the corresponding figures that had been set out in tentative wage determination T-16, 212. Also T-25, 787 omitted altogether wage rates for a category of laborers, “Heavy and Highway Construction Laborers,” that had been included in T-16,212.
(b) The contracting officer mailed a copy of wage determination T-25,787 to the plaintiff on June 26, 1959.
*21 (c) The copy of wage determination T-25,787 was acknowledged by the plaintiff in a letter dated July 1, 1959, to the contracting officer, stating in part as follows:
You are advised that our field investigation discloses this new Prevailing Wage Certificate to be erroneous in many instances, and application is therefore being made to the Department for a Corrected Prevailing Wage in various trades.
I have forwarded to our Washington counsel, Eoger Peed, Esq., the documentary proof, with instructions to arrange for a Corrected Certificate at the earliest date.
(d) Following the receipt of a copy of wage determination T-25,787, the plaintiff requested the Secretary of Labor to correct a number of alleged errors in such determination, by increasing the figures given as the prevailing wage rates for certain classes of laborers. The plaintiff submitted documentary evidence in support of the request. In requesting corrections, the plaintiff did not refer to the elimination from T-25,787 of prevailing wage rates for “Heavy and Highway Construction Laborers.”
,14. Pursuant to the plaintiff’s applications (see finding 11), and following the issuance of wage determination T-25,787 by the Secretary of Labor (see finding 13), the Federal Housing Commissioner on June 29, 1959, issued mortgage insurance commitments for the four mortgage areas, as follows:
Area A-$2,380,200
Area B_ 2,353, 800
Area C_ 1, 993,600
Area D- 1,950,100
15. (a) On June 30, 1959, the plaintiff wrote a letter to the contracting officer, requesting him to “extend the conditions of Paragraph 5 of the Letter of Acceptability to August 5,1959.”
(b) The plaintiff’s request for an extension of time was granted by the contracting officer in a letter dated July 22, 1959, stating in part as follows:
You are hereby granted an extension of thirty (30) days to comply with the specific commitments outlined in Paragraph 5 of the Letter of Acceptability. The due date is, therefore, by this letter set for 4 August 1959.
*22 I am very anxious to initiate the closing of the contract and feel certain that with your excellent cooperation we can do so in the very near future.
18. On or about July 22,1959, the plaintiff made tentative arrangements for the temporary and permanent financing of the project. The cost of financing had increased since the time mentioned in finding 5; and it was necessary for the plaintiff to agree to pay a premium of 6*4 percent of the amount to be borrowed.
17. (a) On August 4, 1959, the plaintiff requested a further “80-day extension of the provisions of Paragraph 5 of the Letter of Acceptability.”
(b) The extension of time mentioned in paragraph (a) of this finding was granted by the contracting officer in a letter dated August 7, 1959. The new due date, according to the contracting officer, was “set for not later than 3 September 1959.”
18. (a) In a second letter dated August 4, 1959, to the contracting officer, the plaintiff stated in part as follows:
Will you please be hind enough to give us a 30-day extension of time within which to close the above-mentioned Capehart Project, which closing was originally scheduled, according to the Letter of Acceptability, for Friday, August 7th?
_ As you undoubtedly know, the Prevailing Wage Certificate issued by the Department of Labor is erroneous in many respects and must be corrected in order to secure an appropriate adjustment in the contract price.
(b) The letter referred to in paragraph (a) of this finding was replied to on August 7, 1959, by George S. Kobinson. The reply stated as follows:
In reply to your letter of 4 August 1959 requesting a 30-day extension of the time limit for closing the subject project to 6 September 1959, such extension is hereby granted, provided that the closing is effected on the conditions hereinafter set forth.
This extension is granted solely for your convenience. No increase in the contract price, resulting from a modification of the prevailing wage determination after the date of this letter, will be effectuated as a result of this extension.
You are hereby requested to return the duplicate copy, signifying your consent to the conditions herein, within *23 5 calendar days of receipt of this letter. Failure to so comply will be cause for forfeiture of your bid deposit and withdrawal of the Letter of Acceptability.
Should you accept the above conditional extension, your failure to be ready for closing on or before 6 September 1859 will indicate your inability to carry out the obligations and terms of your bid and the Letter of Acceptability, and your bid deposit will be considered as forfeited and the Letter of Acceptability withdrawn.
(c) Mr. Nobinson’s letter of August 7,1959, was acknowledged by the plaintiff on August 14, 1959. The plaintiff stated in part as follows:
We cannot agree to the terms as set forth in your letter aforementioned due to the fact that our request for a Corrected Current Prevailing Wage Certificate has been in the hands of the Department of Labor, Washington, D.C., since July 21 last past, which corrected certificate we have not as yet received.
19. (a) On August 20, 1959, the contracting officer notified the plaintiff that wage determination T-25,787 had been modified by the Secretary of Labor to show a higher prevailing wage rate for millwrights. The letter from the contracting officer further stated as follows:
Please consider this letter a reminder that this project must be closed not later than 6 September and that this installation and FHA will require some lead time in order to be able to make arrangement to meet in the area designated by your bank.
(b) Modification No. 1 of wage determination T-25,787 had been issued by the Secretary of Labor on July 15, 1959.
(c) The letter mentioned in paragraph (a) of this finding was acknowledged on August 24, 1959, by the plaintiff, who stated in part as follows:
At the present time there are 14 different wage rates and classifications which must be corrected by modification to the Certificate aforementioned concerning which I have, up to this time, received no word from the Department.
I think it becomes very obvious that we cannot effectuate a closing on or before September 6th which, by. the way, is a holiday weekend, unless we are given sufficient lead time by a Corrected Certificate which adequately *24 reflects the prevailing wages in the area, as per the application presently pending in the Department.
i20. On August 28, 1959, the plaintiff wrote the following letter to the contracting officer:
According to your last communication, the closing of the above-entitled project was scheduled for September 6th which, as I believe I indicated in a previous letter, falls on the Labor Day weekend. As of the present moment we have not as yet received a Corrected Prevailing Wage Certificate from the Department of Labor, Washington, D.C. Obviously, after we receive such a Certificate, and assuming the same is correct, the same will have to be furnished to the FHA in Cincinnati, computations will have to be made on the basis thereof, and the adjusted contract price negotiated to the satisfaction of all parties concerned.
. Under such circumstances, I am sure you can appreciate the fact that this delay is caused by conditions beyond our control and we must of necessity therefore, appeal to you for a further extension of thirty days within which to effectuate the closing.
I might further add that the delay in the receipt of the Letter of Acceptability has very seriously affected the financing costs and now this additional delay in receiving a current prevailing wage certificate is again a very serious matter by virtue of climatic conditions which, as a result thereof, will probably drive the job past the next two winters.
It is therefore of the utmost importance that the release of this certificate be expedited at the earliest available moment so that negotiations for the appropriate adjustment in contract price may commence.
Your early favorable response would be appreciated.
21. (a) On August 31,1959, the plaintiff was notified that the Secretary of Labor had issued a second modification of wage determination T-25,787. Modification No. 2 revised upward the figures previously set out as the prevailing wage rates for several classes of laborers, and went far toward meeting the objections theretofore made by the plaintiff to wage determination T-25,787.
(b) Modification No. 2 of wage determination T-25,787 had been issued by the Secretary of Labor on August 18,1959.
22. On August 31 and September 4,1959, the Secretary of Labor issued two additional modifications of wage deter- *25 ruination T-25,787. They were designated as modifications Nos. 3 and 4, respectively. However, copies of these modifications were not received by the plaintiff until September 25,1959.
23. On September 4,1959, the plaintiff sent the following telegram to the contracting officer at the Clinton County Air Force Base:
IMPERATIVE THAT WE RECEIVE EXTENSION OE TIME RE CLINTON COUNTY CLOSING EXPECT TO NEGOTIATE CONTRACT INCREASE WITH EHA SEPTEMBER 10
24. On September 11, 1959, the plaintiff wrote a letter to the contracting officer, stating in part as follows:
Confirming conversation had with you yesterday concerning the above project, will you please arrange to grant us a further 30-day extension of time within which to close this project?
I am sure you are aware of the fact that it has been impossible to close up to this date due to conditions entirely beyond our control. Matters are still pending which require adjustment, particularly the contract increase due to wage differentials, and, in view of the fact that previous extensions have already expired, it is of the utmost importance that we receive an official 30-day extension of time from your office.
25. On September 22, 1959, the Federal Housing Commissioner amended the mortgage insurance commitments (see finding 14) in order to reflect the wage differentials resulting from the four modifications of wage determination T-25,787 mentioned in findings 19, 21, and 22. The commitment respecting area A was amended to show a maximum insurable mortgage amount of $2,423,700; the commitment respecting area B was amended to show a maximum insurable mortgage amount of $2,396,200; the commitment respecting area C was amended to show a maximum insurable mortgage amount of $2,029,900; and the commitment respecting area D was amended to show a maximum insurable mortgage amount of $1,984,400. Hence, the mortgage insurance commitments were increased from a total of $8,677,700 to a total of $8,834,200, the amount of the total increase being $156,500.
26. On September 24, 1959, George S. Bobinson wrote a letter to the plaintiff, stating in part as follows:
*26 The time for formal closing with the FHA is hereby extended to SO September 1959 with the specific understanding and agreement -that the contract price of $8,-677,750, as bid on 30 April 1959, will be. modified, in accordance with paragraph 5 of the Invitation for Bids, dated 30 March 1959, only to the extent of and to include the Wage Scale Determination issued by the Department of Labor on 19 June 1959, numbered T-25,787, as said determination is affected by modifications 1,2, 3 and 4, notwithstanding any further determinations made by the Department of Labor requiring your compliance.
This extension does not alter other conditions of the Letter of Acceptability and particularly those in paragraph 2 thereof and the application of cancellation should you fail to perform by 30 September 1959.
27. (a) On September 25, 1959, the plaintiff was notified regarding the issuance by the Secretary of Labor of modifications Nos. 3 and 4 of wage determination T-25,787. With the issuance of these modifications, wage determination T-25,787 had been corrected in all the respects requested by the plaintiff, except that no change had been made in the determination as to the prevailing wage rate for roofers.
(b) The plaintiff had no substantial objection to wage determination T-25,787, as revised by the four modifications mentioned in this and previous findings.
28. It was not until after wage determination T-25,787 had been corrected, and the mortgage insurance commitments had been amended as a consequence, that it was feasible for the parties to enter into a formal contract for the construction of the Capehart Act housing project at the Clinton County Air Force Base.
29. The plaintiff was not satisfied with the action of the Federal Housing Commissioner in amending the mortgage insurance commitments (see finding 25). It was the plaintiff’s view that, on the basis of the four modifications of wage determination T-25,787, the mortgage insurance commitments should have been increased in the total amount of approximately $296,900. If the amended mortgage insurance commitments had provided for such an increase, the plain *27 tiff would have been willing to go ahead with the project.[2] In the absence of such an increase, the plaintiff was not willing to proceed with the project.
30. (a) At a conference that was held on September 29, 1959, in the office of George S. Robinson, representatives of the plaintiff took the position that, as a result of changes in the situation occurring since the submission of the bid mentioned in finding 4, it had become economically unfeasible for the plaintiff to proceed with the Capehart Act housing project at the Clinton County Air Force Base; that such changes were beyond the control of the plaintiff and were due to delays on the part of the Government; that the plaintiff should be relieved from the situation, as it was attributable to the Government rather than to the plaintiff; and that the relief should take the form of a withdrawal by the Government, for its convenience, of the letter of acceptability that had been issued to the plaintiff on June 5, 1959, and the return to the plaintiff of its bid deposit in the amount of $25,000.
(b) The position taken by the plaintiff at the conference on September 29,1959, was confirmed in a letter dated September 30, 1959, from the plaintiff to George S. Robinson.
- 31. In a second letter dated September 30,1959, to George S. Robinson, the plaintiff acknowledged the communication mentioned in finding 26 and requested “that an additional extension of time [for the closing] be granted, pending further negotiations with the Department.”
32. The plaintiff’s letters of September 30,1959 (see findings 30(b) and 31) were acknowledged on October 2,1959, by George S. Robinson, who stated in part as follows:
As you recall, I made notes regarding your request when we were discussing the matter in my office, and the next morning I discussed the situation with the General Counsel’s office. We both came to the conclusion that there was absolutely no justification or basis for the Air Force to accede to your request. I called Mr. Peed and found that he was out of town so I indicated to Mr. *28 Wise, who seemed to be familiar with the situation, the Air Force’s position in the matter. He said he would pass it on to you or Mr. Peed.
In the light of the Air Force’s position I suggested to Mr. Wise that the 8 October date seemed to be a satisfactory closing date for the Air Force. He mentioned he did not know whether this date would fit the convenience of the mortgagee, but he would get in touch with the mortgagee so that some mutually satisfactory date for closing could be established, and in this regard would get in touch with our Housing people.
33. (a) In a letter dated October 7, 1959, to George. S. Robinson, the plaintiff requested a further “extension of the closing date at least until such time as the wage adjustment problem has been properly reviewed.”
(b) The reply to the request mentioned in paragraph (a) of this finding was dated October 22,1959, and stated in part as follows:
The time for the closing is hereby extended to 29 October 1959, and a condition of this extension is that the amount of $8,677,750, as set forth in the Letter of Acceptability of 5 June 1959, will be modified in accordance with paragraph 5 of the Invitation for Bids dated 30 March 1959, to reflect only the changes between the tentative minimum wage schedule attached to the Invitation for Bids, and the applicable wage determination issued by the Department of Labor on 19 June 1959, numbered T-25-787, and modifications Nos. 1, 2, 3 and 4. No further modification in the amount of the Letter of Acceptability will be made to reflect any further wage determinations that might be made by the Department of Labor.
This extension does not in any way affect the other conditions of the Letter of Acceptability, particularly those in paragraph 2 thereof, relating to the cancellation of all commitments with you for the construction of this housing project, for failure to perform all obligations set form in the Letter of Acceptability prior to the time prescribed for closing.
34. On October 26, 1959, the plaintiff wrote a letter to George S. Robinson, stating in part as follows:
Under the circumstances, this is therefore to advise you that we cannot effectuate a closing on October 29th, 1959 as indicated in your letter aforementioned, and request *29 is herewith made upon you for the return of our bid deposit in the sum of $25,000.
I am sure you understand that we have at all times been ready, willing and able to proceed with the performance of this job; however, the highly unsatisfactory and grossly inadequate contract price adjustment computed by the FHA, plus the increased cost of performing this job resulting from the delays created by the various governmental agencies, gives us no alternative other than the withdrawal of our bid.
35. (a) The plaintiff’s letter of October 26,1959 (see finding 34) was replied to by George S. Eobinson under the date of November 24, 1959. The concluding paragraph of the reply stated as follows:
This is to notify you that the Letter of Acceptability, dated 5 June 1959, is hereby withdrawn and cancelled, and in view of Clause 8 of the Invitation for Bid and paragraph 2 of the Letter of Acceptability dated 5 June 1959, there is no basis upon which we can legally return your bid deposit. The Air Force is looking into the matter of any additional damages you may be obligated to pay to the Government as a result of the withdrawal of your bid.
(b) In a letter dated December 14, 1959, to the plaintiff, the contracting officer stated that he was “in full accord with the action taken” by George S. Eobinson in the letter dated November 24, 1959. The contracting officer further stated that “Failure of your organization to develop a bid into an economical project does not release your bid deposit.”
36. The plaintiff took a timely appeal to the Secretary of the Air Force from the refusal of George S. Eobinson to refund the amount of the plaintiff’s bid deposit.
37. The plaintiff’s appeal was denied by the Armed Services Board of Contract Appeals in a decision dated September 30,1960. The Board’s opinion stated in part as follows:
In sum, the Board has not been impressed with appellant’s excuses as justification for its non-performance of its contract. The Board finds that the appellant did not make every effort to effect a closing with FHA within the time prescribed, as extended at appellant’s request; and further finds that appellant refused to effect said closing, as required.
From all of the facts and surrounding circumstances together with the reasonable inferences arising there *30 from, the Board finds that the appellant has failed to establish its entitlement to the relief requested in its complaint.
38. The delay in correcting wage determination T-25,787, and the related delay in amending the mortgage insurance commitments, were prejudicial to the plaintiff with respect to the prospective construction of the Capehart Act housing project at the Clinton Comity Air Force Base. The evidence warrants a finding that the costs involved in constructing the project would have been increased by reason of such delay.[3] However, the evidence indicates that the plaintiff’s principal reason for failing to proceed with the project was not the prejudicial effect of the delay previously mentioned in this finding, but, instead, was dissatisfaction with the amounts of the mortgage insurance commitments, as amended. In this connection, the evidence in the record is not sufficient to permit a factual determination to be made regarding the correctness or incorrectness of the Federal Housing Commissioner’s action in calculating the amounts of the mortgage insurance commitments, as amended. Therefore, the administrative action is presumed to have been correct.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover, and the petition is dismissed.

 For an explanation of the obligations which issuance of the letter of acceptability imposed upon plaintiff, see finding 7(a), infra.

 See paragraph 2 of the letter of acceptability, finding 7(a), infra.

 Subsequently, however, plaintiff did charge that it had been harmed by delay in receiving the letter of acceptability. See finding 20, infra.

 Paragraph 5 of the Invitation for bids provided that, based upon a current schedule of prevailing -wages, the Federal Housing Commissioner would determine an appropriate adjustment of the contract price. See finding 3(b), infra.
Regarding the eligible builder’s obligation to apply for an appropriate wage determination by the Secretary of Labor, see finding 7(a), infra.

 Regarding the proposition that a party to a contract who hinders or delays the other party is liable in damages, plaintiff cited such cases as Peter Kiewit Sons’ Co. v. United States, 138 Ct. Cl. 668, 151 F. Supp. 726 (1957), and George A. Fuller Co. v. United States, 108 Ct. Cl. 70, 69 F. Supp. 409 (1947). Each of the cases cited by plaintiff is factually distinguishable from the present case. Furthermore, the precise issue in the instant case is whether defendant’s conduct warranted plaintiff’s refusal to continue with the contract.

 Previously, at the pretrial conference, certain documents which were not part of the Board record had been introduced into evidence.

 In support of its contention that plaintiff had waived any right to a trial de novo, defendant cited Stein Bros. Mfg. Co. v. United States, supra. In Stein, this court held, inter alia, that the Government had waived its objection to the introduction in this court of evidence not presented before the Armed Services Board of Contract Appeals.

 Defendant points out that, by letter of August 14, 1962, defendant furnished plaintiff’s counsel with the pertinent IOTA worksheets. Thus, the worksheets were made available to plaintiff well In advance of January 14, 1963, the date when plaintiff agreed to rely upon the ASBCA record.

 Certain of defendant’s exceptions are based upon the fact that the trial commissioner utilized exhibits of defendant which were introduced at the pretrial conference, but which were not part of the ASBCA record. In somewhat similar circumstances, this court has held that the Government had waived its objection, based upon United States v. Carlo Bianchi & Co., 373 U.S. 709 (1963), to the use of de novo evidence. Cf. Kings Electronics Co. v. United States, 169 Ct. Cl. 433, 446, 341 F. 2d 632 (1965). See also, Stein Bros. Mfg. Co. v. United States, supra, and WPC Enterprises, Inc. v. United States, 163 Ct. Cl. 1, 323 F. 2d 874 (1963).
In the instant case, there is an additional factor. Just before the trial was to begin, the parties agreed to rely upon the administrative record. Nonetheless, in view of the fact that the exhibits in question had been introduced into evidence by defendant prior to the mating of the agreement, we deem proper the use by the trial commissioner of the exhibits.

 An overall increase in the amount desired by the plaintiff would have brought the per-unit cost of the project above the statutory maximum of $16,500. However, the plaintiff and the Air Force could have overcome this difficulty by eliminating some of the additive alternates that had been included in the bid and in the letter of acceptability.

 The evidence in the record is not sufficient to permit a factual determination to be made regarding the extent of such increase.